**UNITED STATES DISTRICT COURT**
**SOUTHERN  DISTRICT OF NEW YORK**

-----------------------------------------------------------------------x

DEYANIRA GOMEZ


                                                    AMENDED COMPLAINT
                                 Plaintiff,         15CV 4036 (AJN)

            Against,

NEW YORK CITY POLICE DEPARTMENT, CITY OF
OF NEW YORK,

-----------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 11/2/15

1.     PLEASE TAKE NOTICE, that Plaintiff and Pro Se litigant Deyanira Gomez as for

her complaint against Defendant NEW YORK CITY POLICE DEPARTMENT, CITY OF NEW

YORK, respectfully set forth and allege that defendant and or defendants engaged in Unlawful

 employment practices. Therefore discriminating against Plaintiff during her employment and

depriving Plaintiff protection under Title VII of the Civil Rights Act of 1964, as codified,42 U.S.C.

-2000e to 200e-17 (race, color, gender, religion, national origin). Failing to accommodate

plaintiff  in violation of The Americans with Disability Act of  1990, as codified 42 U.S.C. - 12112

- 12117, New York State Human Rights Law, N.Y. Exec Law - 290 to 297, New York City

Human Rights Law, N.Y. City Admin. Code 8-101 to 131.


2.     Defendants also engaged in Unlawful Discriminatory Practices such as but not limited to

failing to accommodate plaintiff's disability, after she suffered an on duty accident and sustained

multiple injuries to her body,  Including psychological trauma while effecting her duties as a New

York City Police Officer. As a result of this accident  plaintiff is now permanently disabled.

3.      Plaintiff alleges that defendant unlawfully dismissed plaintiff's employment by forging

New York City Police Department medical records in order to force plaintiff into a mandated

alcohol treatment facility under threats of suspension and job termination. Plaintiff alleges

that defendants retaliated against her for filing a lawsuit and applying for a disability

retirement after her work related accident.  The retaliation became more severe after being

served with a Recommendation to survey plaintiff off of her employment, by Defendant Dominic

Valenti.  After speaking with her union officials she was advised to sign the survey. **SEE**

**EXHIBIT**  A

Plaintiff alleges that she had to endure working in a hostile working environment

with unequal terms and conditions of plaintiff's employment, committed by defendants

employees of The City Of New York, New York City Police Department.

4.  All of these allegations were reported to The New York City Commission of Human Rights

on or about January 24, 2011 within one year of all the allegations cited above being committed.

Plaintiff would also like to respectfully ask the court to review her case made with the New York

City Commission on Human rights Complaint No. M-E-D-11-1024738-D and E.E.O.C. Federal

Charge #16F-2011-00187-C  Pursuant to Section 8-123 (H) of title 8 of the Administrative Code

of the City of New York. 5.  Plaintiff did appeal the biased decision made by the commission

based on a false statement made by Defendant M.D. Galvin. The commission also failed to

provide Plaintiff with complete F.O.I.L. request and also failed to properly investigate her

defense on the appeal. The commission also failed to note on their final determination what

biased further investigation was conducted after her appeal. The commission's decision was based on unfavorable retaliatory evaluations instead of  plaintiff's medical records, her medical impairments and  making her complaint. The Commissioner of the New York City Commission on Human rights has also admitted that complaints made to them are often dismissed because of lack of investigatory training, personnel and funding. The commission also failed to ask or interview witnesses besides from the defendants accused in her complaints or witnesses that could testify unbiasedly. Plaintiff would also like to let it be known to the court  that she has exhausted all of the administrative remedies known to her.  Please see Exhibit ___B___

5.      On April 3, 2008 Plaintiff former Police Officer Deyanira Gomez suffered an accident while performing the duties of a police officer. The multiple injuries she sustained after this accident resulted in making plaintiff completely disabled. The injuries Plaintiff sustained after this accident are multiple injuries to her cervical , lumbar and thoracic spine. These include anterior disk extensions,anterior disk spurring, posterior disk bulge, diffused disk desiccation, disk herniations. A tear to her right rotator cuff, right shoulder derangement and impingement the she received surgery for.   After complaining of sharp needle like pain, numbness and swelling of her hands and arms due to the non stop repetitive work she performed, an electromagnetic nerve test {E.M.G.} revealed nerve damage:  C-6/C-6 radiculopathy. Plaintiff was also subsequently diagnosed with Post Traumatic Fibromyalgia, Post Traumatic Stress Disorder and Major depression. Plaintiff has provided accident and

medical reports. See Exhibit

6.      On or about March of 2009 Plaintiff who performed clerical tasks in her permanent

command because of her injuries in a restricted capacity was transferred without applying for

said change to Brooklyn Central Booking Expedited Arrest Processing unit.  A unit that required

most of its officers to work a mandated thirty five (35) hours of overtime a month. This overtime

was many times given without prior notice to employees. Plaintiff would often when given

overtime work seventeen (17)  hours. Plaintiff was then left with only six hours to drive home

sleep and then return to work her regular shift.  Plaintiff did ask a male lieutenant Taylor

who was the administrative supervisor if she could be exempt from doing such overtime

due to her constant pain but he refused.

7.      On or about June of 2009 Plaintiff, during a visit to the N.Y.P.D. Medical Unit

complained to defendant M.D. Peter Galvin, who regularly saw plaintiff about how the large load

load was impacting her injuries. Plaintiff also told defendant that her supervisor Sergeant Brown

complained to other supervisors that plaintiff was working too slow and causing the work in her

assignment which is time sensitive to back up. Said supervisor had Plaintiff removed from her

assignment at 120 Jay Street to 120 Schermerhorn Street because her injuries caused her to

work slow. Plaintiff was also told by co-workers and one supervisor that Sergeant Brown had

been complaining about her. Plaintiff's supervisors were all aware that plaintiff was medically

restricted. Her assignments required none stop repetitive movements

(writing, log keeping, data entry, etc…)  and mandated overtime.

**21-e. The term "reasonable accommodation" means actions taken which permit an employee, prospective employee or member with a disability to perform in a reasonable manner the activities involved in the job or occupation sought or held and include, but are not limited to, provision of an accessible worksite, acquisition or modification of equipment, support services for persons with impaired hearing or vision, job restructuring and modified work schedules; provided, however, that such actions do not impose an undue hardship on the business, program or enterprise of the entity from which action is requested.**

8.      Prior to being transferred to her new assignment defendants were aware that because of her injuries she could not do repetitive moments, prolonged sitting or standing ect…( See attached M.D. notes in Exhibit)  She explained how her new assignment caused her exacerbating pain, swollen limbs, numbness, headaches, sleep deprivation, exhaustion and regular anxiety attacks. Plaintiff gave defendant multiple Treating Physician Medical reports (N.Y.P.D. Form) detailing her limitations which included no overtime  worded as not more than eight (8) hours of work. Many of those reports also included that I could not work at all, but defendant refused my doctor's advice continuously, by immediately placing me back to work and refusing to offer me any type of accommodation.

9.      Plaintiff asked if it was possible for defendant to exempt her from overtime or help her get transferred to another command with no overtime and less of a workload but he refused. During an interview with an investigator from The New York City Commission on Human Rights

M.D. Galvin made false statements and denied ever receiving seeing these Treating Physician

Summary Reports and further went on to say that his signature was required on these reports.

There is no line on these reports demanding his signature. During plaintiff's appeal with the

commission plaintiff made that point very relevant. Plaintiff also stated that it was mandatory for

her to hand all of these reports to defendant, to keep track of her Line of Duty Injury.  See

EXHIBIT ___ D

10.     During most of my visits to the medical clinic defendant Dominic Valenti who is not a

medical doctor and who is assigned to The Absence Control Unit that works out of the same

building stood inside the examining office watching and  listening to my private health

information which he is not legally privy to. Making me feel violated. Plaintiff expressed that to

both defendants and other supervisors but nothing was done to stop him.

11.     On most of Plaintiffs appointments  M.D. Galvin let Defendant Dominic Valenti  who is

not a medical doctor  make decisions on when she should return to work, what her limitations at

work should be and when to physically examine me. Defendant also called and referred to  my

medical diagnosis of Fibromyalgia as a "Catch All",  knowing  of the results of my previous

M.R.I.'s and E.M,G. results.  (Exhibit __ pg. 40 lines Line 25 - pg. 41 Lines 1 - 10).

See Below:

"WRONGFUL DISCLOSURE OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION:

"**SEC. 1177.** (a) OFFENSE.--A person who knowingly and in violation of this part--

(1) uses or causes to be used a unique health identifier;

"(2) obtains individually identifiable health information relating to an individual; or

"(3) discloses individually identifiable health information to another person,

"shall be punished as provided in subsection (b).

"GENERAL REQUIREMENTS FOR ADOPTION OF STANDARDS


SEC. 1172. (a) APPLICABILITY.--Any standard adopted under this part shall apply, in whole or in part, to

the following (3) A health care provider who transmits any health information in electronic form

Medical groups that pay the cost of medical care for their insured connection with a transaction

Referred to in section 1173(a)(1).


12.     On or about June of 2009 after Plaintiff told Defendant M.D Galvin that she was

suffering from repeated anxiety attacks he referred her to the N.Y.P.D. psychological

Division where she saw a Defendant Eric Gauen an N.Y.P.D. psychologist. After describing

her ailment due to her heavy workload and mandated overtime she asked if it was possible

for him to accommodate her by exempting her from over time or helping her get a transfer

to a non overtime command or assignment but he refused.  After plaintiff described how she

repeatedly throughout her career suffered from retaliation and presently had a

discrimination and sexual harassment lawsuit his demeanor towards her changed. He left

the room and when he returned he asked plaintiff if she consumed any alcoholic beverages.

Plaintiff replied on special occasions. He then stated that he was referring her to the

N.Y.P.D. Counseling Unit. Defendant made false entries on plaintiff's medical records stating

that plaintiff was drinking three alcoholic beverages every day to help with her sleep. See

EXHIBIT _____

13.    The next day Plaintiff went to the counseling unit and met with Defendant

Police Officer Victoria Tobin who told her that she was referred to the unit because

Defendant Eric Gauen stated that she was drinking three drinks a day while taking percocet.

Defendant also told Plaintiff that she had three hours to pack a bag and then be driven to

another state for inpatient alcohol and prescription drug abuse. When plaintiff explained she

could not leave her underage child home alone for thirty days. Victoria Tobin stated that, "

Crack Heads" do it all the time. A comment unbecoming for a counselor. Plaintiff is not nor

has ever been known for an addiction to alcohol or prescription drugs. Plaintiff gave

defendant copies of her prescription report along with copies of her prescriptions to
corroborate the fact that these accusations were false. And asked to be immediately tested
for drug and alcohol abuse but defendants refused her. Defendants took adverse action by
threatening to suspend or terminate her employment if she refused. Defendants made false
statements and forged medical records and exaggerated a non existing condition in order to
have her admitted into a rehab facility.  Plaintiff has doctor's notes stating otherwise.  See
Exhibit _____


14.  Plaintiff refused and was thus suspended for thirty (30) days

without pay. Upon her return to duty she was forced to attend an outpatient treatment

facility for  approximately seven months or more with only one day off. Plaintiff successfully

completed the program to avoid another suspension or termination.

See EXHIBIT


15.    Plaintiff alleges that she was suspended on December 8,2009 because she was

suffering from her sciatic nerve and she could no longer ambulate without assistance. Prior to

that date Plaintiff was admitted to St luke's hospital for six days because she could not

ambulate. She was discharged and brought to her home via ambulance and assigned a nurse

and a physical therapist to her home. She immediately notified defendants that she was

discharged and could not drive or ambulate and that she was advised not to go out until she

was trained on how to ambulate with her walker. Defendant Dominic Valenti warned her that if it

was found after a medical examination that she could ambulate that she would be suspended.

Plaintiff provided defendants with all of her discharge instruction/papers including the hospital

ambulance report  but Defendant Peter Galvin after examining her had her suspended. During a

departmental trial he also made a false statement by stating that plaintiff never showed him any

of the forms stated above. See EXHIBIT ____ F/D

16.    Prior to the above incident where plaintiff went sick for the same condition after being

rear ended by a motor vehicle. She was having trouble ambulating but  was immediately forced

back to work making her condition worse. She was also ridiculed in front of coworkers and a

friend who accompanied her to the medical division. Defendant a male doctor Lichtenstein at

the N.Y.P.D. medical unit forced Plaintiff to walk to the other side of the building to a room used

for candidate testing instead of his private office which was approximately 20 feet away from the

waiting room. She was never examined by him nor did he stand in the hallway to watch her

ambulate. In front of everyone he mocked me as I walked towards him and bystanders. He then

asked me if I knew what theft of service was. Defendant also divulged her personal

psychological and medical information. In front of witness William Carrabino, Lieutenant Moran

and another female police officer. Plaintiff did provide defendant with a note from her doctor

stating that she was completely disabled and could not return to work. See EXHIBIT ____ G


17.    Plaintiff believes that the reasonable accommodations she requested for did not create

an undue hardship for defendant City of New York or their employees. See; Cooperman vs

Department of Correctional Facility 394 N.Y.S. 2d 324 (N.Y.App Div 3rd Department,1977)

-Terms of reasonable accommodation include modified work schedules-

Defendant dismissed plaintiff from her employment before allowing her to pursue or secure

accommodation knowing that an on the job injury caused her disability.

Plaintiff was never suspended for refusing to perform the essential functions of her clerical

position while on restricted duty. Plaintiff alleges that the adverse actions defendants took

against her were in retaliation for filing a lawsuit and applying for a disability pension for injuries

sustained while performing her duties. Which is a protected activity.

See: General Municipal Law Sections 205-a and § 205-e. Right of action to certain
injured or representatives of certain deceased police officers.

(3) This section shall be deemed to provide a right of action regardless of whether the

injury or death is caused by the violation of a provision which codifies a common-law duty and

regardless of whether the injury or death is caused by the violation of a provision

prohibiting activities or conditions which increase the dangers inherent in the work of any

officer, member, agent or employee of any police department. See: General Obligation Law

Section 11-106.

18.     The injuries that Plaintiff sustained from a work related accident interfered with the

performance of the essential job functions that she was hired to do as a New York City Police

Officer. Defendants failed to engage in the interactive process of accommodating to collectively

assess the interaction between employee limitations and job requirements. The interactive

process therefore creates an obligation for employers to be proactive and collaborative in

attempting to find a working solution. According to Phillips Court, failure to engage in the interactive process is a violation of NYSHRL. As under the ADA , that violation will prevent an employer from succeeding on a motion to dismiss or for summary judgement. See Phillips.,884 (N.Y.S.2d at 378-9). Defendants engaged in unlawful discriminatory practices by repeatedly threatening suspensions, multiple unpaid suspensions, unjustified negative evaluations,unjustified negative references, wrongful disclosure of individually identifiable health information, giving orders that were reasonably believed to be discriminatory.

19.    Plaintiff is hoping that at the end of this case she will be offered relief in the form of financial compensation for her time lost or reinstatement with a disability retirement. Plaintiff would like to thank the court for the time taken to review this and hopes that the outcome of this case will be in her favor.

Sworn Before Me This

_____ 2 Day of Nov 2015

Notary Public:

CHEN, YUAN JIE
Notary Public, State of New York
No. 01CH6012510
Qualified in New York County
Commission Expires Aug. 31, 20

Deyanira Gomez
Plaintiff, Pro Se

Executed on November 02,2015
To: Zachary W. Carter/Scott Silverman
    Corporation Counsel City of New York
    Attorney for Defendant
    100 Church Street Rm. 2-107
    New York, N.Y. 10007