UNITED STATES DISTRICT COURT
SOUTHERN DISTRCIT OF NEW YORK

DEYANIRA GOMEZ                                    15CV4036(AJN)

                Plaintiff

                -vs-

CITY OF NEW YORK, NEW YORK CITY
POLICE DEPARTMENT

                Defendant

## AFFIDAVIT

I, Milton A. Gomez, of Fleetwood, New York, MAKE OATH AND SAY THAT:

1. I am the brother of the claimant, in this action, Deyanira Gomez, and as such have personal knowledge of the facts and matters herein, except where stated to be based upon information and belief, and where so stated I have named the source of the information, and believe the same to be true.

2. The claimant, Deyanira Gomez, was a Police Officer employed by the New York City Police Department from 1994 -2010.

3. On April 03, 2008, the claimant suffered an injury while on duty at the Manhattan Detention Center, where the front gate to the center malfunctioned and came down her. She suffered a torn rotator cuff, multiple herniated spinal discs, and damage to her central nervous system.

4. The claimant was subsequently diagnosed with Post Traumatic Fibromyalgia, Post Traumatic Stress Disorder and major depression.

5. I was listed as claimant emergency contact and observed retaliatory behavior towards the claimant.

6. I received disturbing calls from the New York Police Department during off hours wanted to know the whereabouts of the claimant.

7. On August 1, 2010, I received a call at 1:30 am by Sergeant Virgil stating that the claimant failed to show up at work. I was told that I had to provide telephone numbers where the claimant could be reached. I was told if I did not comply that the claimant would be listed as AWOL and at risk of losing her job.

8. I had personal knowledge that claimant worked the day shift August 1, 2010 so the call at 1:30 am was alarming and disturbing.

9. The claimant was forced to work overtime despite of medical conditions and restricted duty status.

10. The claimant's physical and mental health was further impacted by the stressful conditions at work. Impacting her ability to perform routine tasks such as house chores and driving.

11. I accompanied the claimant to medical and legal appointments.

12. I accompanied the claimant to all appointments at the New York City Commission on Human Rights and was a witness to all discussion and transactions. All appointments were attended to and proper notification was provided for one delay due to traffic and one appointment rescheduling. On October 24, 2013 at approximately 3:10 pm, I called Investigator Ramon Wayne and informed him that claimant was stuck in traffic and would be arriving a few minutes later.

13. The claimant expressed her concern on how her case was being investigated and the amount of time it was taking for the case to be completed. The claimant voiced those concerns to New York City Commission on Human Rights Investigator Ramon Wayne.

SUBSCRIBED AND SWORN TO                )
BEFORE ME, on the                      )
30th day of October, 2015              )

_____    )    _____
NOTARY PUBLIC                   )    Milton A. Gomez

My Commission expires: 08/05/2017     )

AHN TED TAESHIK
Notary Public, State of New York
No. 01AN6286995
Qualified in Westchester County
Commission Expires 08/05/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DEYANIRA GOMEZ

       PLAINTIFF         CASE# 15CV-4036 (AJN)

CITY OF NEW YORK, NEW YORK CITY POLICE DEPARTMENT

       DEFENDANT

I, WILLIAM JOHN CARABANO, am writing this letter to confirm my recollection of events that took place on one of the two occasions that I accompanied former Police Officer DEYANIRA GOMEZ to NYPD Medical in Lefrak City.

**On November 24, 2009...**
I received a call from MS. GOMEZ asking if I could assist her with an appointment at the above mentioned NYPD Medical at Lefrak City. She also asked me to secure a paid driver that would be willing to take the trip, wait for the appointment to end, then retrieve her to take her home afterwards.

I assisted MS. GOMEZ into the vehicle and joined them for the ride. I felt that, due to the condition MS. GOMEZ was in (which included difficulty walking due to stiff movement), I should accompany her into the building. Her appointment was with a DR. LICHTENSTEIN. So, my assumption was that I could hand off MS. GOMEZ to one of the trained staff there.

Upon arrival, MS. GOMEZ was greeted very abruptly and unprofessionally. MS. GOMEZ was asked to report to a room on the other side of the facility. When MS. GOMEZ informed them of her limited mobility, it was completely disregarded. In addition, not one staff member offered anything to make the walk easier on MS. GOMEZ. A wheelchair or at least a walker would have been useful considering the distance. A closer room would have been ideal.

To speed forward, I assisted MS. GOMEZ during the walk to this room. It took close to 20 minutes for us to travel the entire way. Upon entering, the room looked familiar because it appeared like the room I was in with a group of NYPD candidates about ten (10) years prior.

After MS. GOMEZ and I entered, my first assumption was that I would be escorted out of the room. In addition, I would have thought that everyone else would be asked to leave the room, as well. When we were not, my next thought was that my relation to MS. GOMEZ would be questioned.

I bring this up because I worked for a neurologist at NYU Medical for many years and my mother worked for Maimonides Medical for more than 20 years. It is just one of a few necessary steps by medical professionals in order to avoid violating HIPAA Privacy Laws regarding the safe keeping of one's PHI (Protected Health Information).

The next step by DR. LICHTENSTEIN, neither of which were done, should have been to either:
 A. File paperwork showing MS. GOMEZ's consent to MYSELF and ALL OTHERS present in the room to be informed about any of her PHI; or at minimum
 B. Receive informal consent from MS. GOMEZ to MYSELF and ALL OTHERS present in the room to be informed about any of her PHI.

Moving forward, DR. LICHTENSTEIN began a very harsh questioning of MS. GOMEZ. DR. LICHTENSTEIN's attitude and demeanor were accusatory from the first words out of his mouth. Included in some of DR. LICHTENSTEIN's statements were questions asking if MS. GOMEZ understood the meaning of "Theft of Service". This stood out to me because it felt wrong of DR. LICHTENSTEIN to begin with this line of questioning as a medical doctor. In addition, doing so in the presence of MYSELF and ALL OTHERS in the room.

MS. GOMEZ became visibly upset and asked the doctor if he was accusing her of this act. Instead of outright conceding, the doctor simply continued by informing MS. GOMEZ of the penalties that she could incur if she was indeed committing the act of "Theft of Service".

DR. LICHTENSTEIN never physically examined MS. GOMEZ, so I am unsure as to where his suggested assessment came from. It was a very uncomfortable situation to be involved in.

In closing, DR. LICHTENSTEIN advised MS. GOMEZ to return again the prior day in order to see another doctor. This seemed excessive seeing as how she already had so much difficulty attending this first visit in her condition AND because of the expense of having to pay numerous fares to bring her to and from due to not being able to drive on her own.

I, as a friend to MS. GOMEZ and as a witness to the aforementioned events, attest them to be true. I am willing to testify for MS. GOMEZ if I am needed in the future.

_____
William John Carabano

_____
NOTARY PUBLIC

My commission expires ___9/12/2017___

LING FUNG CHEUNG
Notary Public, State of New York
No. 01CH6133227
Qualified in Kings County
Commission Expires Sept. 12, 2017

# Exhibit : A

------------------------------

# Containing:

------------------------------

① Survey
② Line of Duty Accident Report
③ Removal of Shield and I.D.
④ Patrol Guide Procedure
⑤ Witness Affidavit.

Sing off Job 01/05/09



# RECOMMENDATION FOR SURVEY
PD 429-181 (Rev. 5-92)-h2

1/5/09
DATE

From:

To: Supervising Chief Surgeon

Subject: **RECOMMENDATION FOR SURVEY**

Rank/Name: PO Gomez, Reynira

Command: 23 PCT     Tax No. 906356

Social Security No. _____

1. The above-captioned uniformed member of the service has been on sick report/restricted duty since **5-5-08** with the complaint(s), diagnosis(es) OF: **RIGHT SHOULDER DERANGEMENT**.

2. Recommend that a survey be conducted in order to ascertain whether this member is incapacitated for the performance of duty and ought to be retired.

Agree X _____

Disagree X _____

DISTRIBUTION:  Copy 1-Disability Unit, H.S.D.;   Copy 2-Member's clinic medical file

# LINE-OF-DUTY INJURY REPORT
PD 429-154 (Rev. 6-89)-H1 – Ref. P.G. 120-3

**PART A** (Prepared By Patrol/Command Supervisor)

## WHO
- RANK/SURNAME: Gomez
- FIRST: Deyanira
- M.I.:
- SHIELD: 8654
- COMMAND: 23
- APPOINTMENT: 2-28-94
- ON DUTY: X / OFF DUTY:
- UNIFORM: YES / NO
- SOCIAL SECURITY NO: 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
- TAX REGISTRY: 906356
- DATE OF BIRTH: 6-17-72
- HEIGHT (IN.): 5'0
- WEIGHT: 163
- SEX: F
- PARTNER'S SEX: Pris Transport

## WHEN
- MONTH/DAY/YEAR: 4-3-08
- DAY OF WEEK: Thur
- HOUR: 4
- TOUR: 2
- AT TIME OF INJURY: WITH MOS
- POST OR ASSIGNMENT: Pris Transport

## WHERE
- [X] INSIDE — ADDRESS OF BUILDING: 100 Centre Street
- POLICE FACILITY: YES
- EXACT LOCATION IN BUILDING: Exit Gate
- PCT. OF OCC.: 5
- AIDED NO.:

## REPORTED SICK
- [X] YES
- DATE: 4/4/08
- TIME: 0545
- MEDICAL DISTRICT: 15
- OTHER DEPARTMENT, FORMS FORWARDED: Aided Card, Witness Stmt
- HOSPITAL: Lenox Hill
- DIAGNOSIS: Contusion to Back
- DOCTOR'S NAME: Reiffe

## WHAT
- INJURY TO: [X] ARMS, [X] TRUNK, [X] NECK, [X] BACK, [X] OTHER (Specify): Shoulder
- TYPE OF INJURY: [X] CONTUSION, [X] SPRAIN, STRAIN

## HOW
- IF ASSAULTED, INJURY RECEIVED FROM: [X] STRUCK BY OBJECT

### PATROL/COMMAND SUPERVISOR'S REPORT OF INJURY

A/T/P/O while exiting manhattan criminal court corrections sections (after lodging prisoners) The exit roll up gate malfunctioned hitting PO gomez in back area. Corrections officers Medina shield #13437 and correction officer Mercado shield #10958, both state that there was a malfunction on gate and observed the incident. Both correction officers refused to prepare witness statements, but did account for incident in their log page 430.

- IS INJURY APPLICABLE TO THE FEDERAL EMPLOYEE'S COMPENSATION ACT: [X] NO
- RANK/NAME PATROL COMMAND SUPERVISOR (PRINT): Sgt. Lopez — SHIELD: 4376 — COMMAND: 23 — DATE: 4-3-08
- NAME OF WITNESS:
  - P.O. Ospina — ADDRESS: 164 E 102nd St, NY, NY — SHIELD: 11766 — COMMAND: 23 — PHONE: (212) 860-6411
  - P.O. Lampert — 164 E. 102nd St, NY, NY — SHIELD: 24402 — COMMAND: 23 — (212) 860-6411

**PART B** INVESTIGATING SUPERVISING OFFICER'S REPORT AND RECOMMENDATION

I concur with above.

PAPERWORK RECEIVED BY LINE OF DUTY ON 5/15/08
REVIEWED BY AND FORWARDED FOR FILING BY ABOVE ON 5/15/08

- NEGLIGENCE ON PART OF INJURED MEMBER: [X] NO
- PERFORMANCE IN LINE OF DUTY: [X] YES
- [X] APPROVAL
- RANK/NAME OF SUPERVISING OFFICER: LT. Espinal — COMMAND: 23 — DATE: 4-3-08

**PART C** APPLICATION FOR LINE OF DUTY DESIGNATION

DESCRIBE HOW INJURY SUSTAINED:
At T/P/O while attempting to exit gated area at MCB. I was struck by defective gate which knocked me down striking my back and my right elbow. I was pulled to safety by P.O. Lampert and P.O. Cassella.

- RANK/NAME OF REQUESTING MEMBER: PO Deyanira — DATE: 4/28/08
- RANK/NAME COMMANDING OFFICER/DUTY CAPT.: DI DAVID COLON — COMMAND: 23 — DATE: 4/29/08
- RANK/NAME COMMANDING OFFICER OF NEXT HIGHER COMMAND: DI BARRY BUZZETTI — DATE: 4/30/08

INSTRUCTIONS: PART A prepared by patrol/command supervisor for all LINE OF DUTY injuries or illnesses whether member reports sick or not. PART B prepared by supervising officer investigating injury. PART C prepared by member if requesting line of duty injury designation.

DISTRIBUTION: FIRST THREE COPIES AND WITNESS STATEMENT — INJURY TO MEMBER OF THE DEPARTMENT (PD 429-065) TO BOROUGH OFFICE OR NEXT HIGHEST COMMAND. SAID COMMAND SHALL FORWARD TWO COPIES TO HEALTH SERVICES DIVISION, ONE COPY TO PERSONNEL SAFETY DESK. LAST COPY FILED IN MEMBER'S PERMANENT COMMAND (PERSONNEL FOLDER).

"A"  Shield/ID Card Removal Log # 2008-05

# POLICE DEPARTMENT
# CITY OF NEW YORK

9/24/08
_____
Date

From:     Supervisor, Medical Division

To:       Supervisor, Shield/ID Card Unit

Subject:  **REMOVAL OF SHIELD, FULL DUTY IDENTIFICATION CARD AND FIREARMS**

   1.  The following member of the service was placed in a NO FIREARMS STATUS on 9/24/08. Please issue PO Gomez, Deyanira
       _____                          _____
        Date                                 Rank/Name

   906356   a No Firearms identification card. The member's Shield and Full
   _____
    Tax #

Duty identification card were removed and will be forwarded for safekeeping.

   2.  It is requested that upon issuing the No Firearms identification card, the Supervisor, Shield/ID Card Unit complete the endorsement below and fax it to the Firearms Removal Desk at 718-760-7621.

                              PS A Hedum MD 929246
                              _____
                              Supervisor's Rank/Name/Tax #
                              For Lt. Borruso.

## 1ST ENDORSEMENT

Supervisor, Shield/ID Card Unit to Commanding Officer, Medical Division. On _____
                                                                              Date
the above member was issued a No Firearms identification card.

                                                  Supervisor
                                                  Shield/ID Card Unit

## TEMPORARY REMOVAL OF FIREARMS IN NON-DISCIPLINARY CASES
(I.O. 28 s.01)

- The following Ranking Officers may determine that a member's firearms should be removed for non-disciplinary reasons:
  * Department Surgeon
  * Captain or above
  * Other competent authority

- Non-Disciplinary reasons include:
  * Stress
  * Suicidal tendencies, etc.

**RANKING OFFICER.**
- Request response of Department psychologist through Sick Desk Supervisor, if warranted.
- Direct that the following be removed:
  * All firearms
  * ID Card
  * Shield
- Ascertain if member possesses other firearms by:
  * Questioning MOS
  * Directing Desk Officer, Pct. of surrender, to check member's FORCE RECORD
- Notify Early Intervention Unit
- Prepare a confidential report and forward, as follows:
  * Original to CO, Medical Division
  * Director, EMD, Attention: Early Intervention Unit
  * CO, MOS
  * Chief of Internal Affairs if incident generated an IAB log number.
- Pending further instructions from the CO, Medical Division, direct MOS to:
  * Report to permanent command, the time depending on weekday or weekend:
    ~ Weekdays at 0900 hours
    ~ Weekends – normally assigned tour
  * Be assigned to non-enforcement duties.

**DESK OFFICER COMMAND OF SURRENDER**
- Notify member's permanent command & request check of FORCE RECORD to determine if all weapons were surrendered
- Have PROPERTY CLERK'S INVOICE prepared for firearms obtained.
  * Include notation, "Property of uniformed member of the service-Not to be returned without approval of Commanding Officer, Medical Division.
- Place shield and ID Card into PLASTIC SECURITY ENVELOPE.
- Secure firearms, shield and ID Card in property locker.
- Command Log entry.
- DO NOT Prepare:
  * INVOICE for shield & ID
  * REMOVAL/RESTORATION OF FIREARMS REPORT
- If notified that MOS does not require a psychological evaluation or the evaluation finds no basis to remove firearms:
  * Make a return call to the Medical Division to verify authenticity
  * Telephone Record entry
- Notify CO & Roll Call.
- Return firearms, shield and ID to member.
- Direct member to report to Early Intervention Unit on next business day.
- Command Log entry.

**NOTE:** When a MOS believes that possessing firearms, during off-duty hours, could further aggravate a current personal problem (e.g., potential domestic violence allegations), the MOS may request that firearms be safeguarded at the command. The Desk Officer makes a COMMAND LOG entry each tour weapon is safeguarded. It is not required to enter a justification for the safeguarding. When the firearms are returned, make an entry in the margin of the original entry.

# Exhibit : B

------------------------------

## Containing:

------------------------------

① N.Y.C. Commission on human Rights Appeal
② New Commissioner Article
③ Email letters