UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Deyanira Gomez,

Plaintiff,

—v—

New York City Police Department *et al.*,

Defendants.

---

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____

15-CV-4036 (AJN)

MEMORANDUM AND
ORDER

ALISON J. NATHAN, District Judge:

Plaintiff in the above-captioned action brings claims under the Americans with Disabilities Act of 1990 ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law "NYCHRL").[1]  Dkt. No. 20 ("Am. Comp.") ¶ 1.  Presently before the Court is Defendants' partial motion to dismiss Plaintiff's Amended Complaint under Federal Rule of Civil Procedure 12(b)(6).  Dkt. No. 21.  For the reasons articulated below, that motion is granted.

## I.    BACKGROUND

Plaintiff Deyanira Gomez, a former police officer with the New York City Police Department ("NYPD"), alleges that the NYPD and City of New York discriminated against her in a variety of ways after she was injured in a workplace accident on April 3, 2008.  Am. Comp. ¶ 5.  As a result of her accident, Plaintiff suffered nerve damage, including "sharp needle like

---

[1] Plaintiff also cites in passing the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), *see* Am. Comp. ¶ 11, but "HIPAA does not provide for either an express or implied private right of action." *Warren Pearl Constr. Corp. v. Guardian Life Ins. Co. of Am.*, 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases). As a result, the Court does not construe Plaintiff's complaint as raising a HIPAA claim. *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

pain, numbness and swelling of her hands and arms," and was assigned to restricted duty. *Id.* ¶¶ 5-6. In March 2009, her restricted duty ended and she was transferred to the Brooklyn Central Booking Expedited Arrest Processing Unit, which required its officers to work 35 hours of overtime each month. *Id.* ¶ 6. Shortly after her reassignment, Plaintiff asked an administrative supervisor if she could be exempt from overtime due to her medical condition, but her request was refused. *Id.*

In June 2009, Plaintiff saw Dr. Peter Galvin, a doctor with the NYPD Medical Unit. *Id.* ¶ 7. During this visit, Plaintiff "explained how her new assignment caused her . . . pain, swollen limbs, numbness, headaches, sleep deprivation, exhaustion, and regular anxiety attacks." *Id.* ¶ 8. She requested that Dr. Galvin "exempt her from overtime or help her get transferred to another command with no overtime," but he allegedly refused. *Id.* ¶ 9. At the end of the visit. Dr. Galvin referred Plaintiff to Dr. Eric Gauen, an NYPD psychologist. *Id.* ¶ 12.

Plaintiff saw Dr. Gauen in approximately June 2009, described her medical issues, and again "asked if it was possible . . . to accommodate her by exempting her from over time [*sic*] or helping her get a transfer . . . but he refused." *Id.* ¶ 12. During this discussion, Plaintiff revealed that she had initiated a sexual harassment lawsuit against the NYPD. *Id.* At this point, Dr. Gauen allegedly "made false entries on [her] medical records stating that [she] was drinking three alcoholic beverages every day to help with her sleep" and referred her to the NYPD Counseling Unit. *Id.* When Plaintiff arrived at the NYPD Counseling Unit the next day, she was informed that she needed to enroll in an inpatient alcohol and prescription drug abuse program. *Id.* ¶ 13. Plaintiff refused to do so and was suspended for 30 days. *Id.* ¶ 14. When she returned to work, she was forced to attend an outpatient substance abuse treatment program for seven months. *Id.*

2

Upon her return to work, Plaintiff was "ridiculed in front of coworkers" and "mocked" by Dr. Lichtenstein of the NYPD Medical Unit. *Id.* ¶ 16.  On December 8, 2009, Plaintiff was suspended again because "she could no longer ambulate without assistance." *Id.* ¶ 15.  Some months later, in May 2010, Plaintiff submitted medical documentation recommending that she work no more than eight hours a day.  Dkt. No. 2 at 25.  After submitting these materials, Plaintiff again requested an accommodation but was refused and informed that she would be suspended if she did not perform her assigned overtime.  *Id.*  On July 29, 2010, Plaintiff requested another transfer but was again refused.  *Id.*  Finally, on November 22, 2010, Plaintiff was terminated from her employment at the NYPD.  *Id.*

Based on these events, Plaintiff filed a complaint with the New York City Commission on Human Rights ("CCHR") and the Equal Employment Opportunity Commission ("EEOC") on June 14, 2011.[2]  Dkt. No. 2 at 26.  On February 18, 2015, Plaintiff received a notice of dismissal and rights from the EEOC.  *Id.* at 22.  In response, Plaintiff filed suit in federal court on May 18, 2015.  Dkt. No. 2.  After Defendants moved to dismiss, Dkt. No. 15, Plaintiff filed an Amended Complaint adding additional information.  Dkt. No. 20.  In addition to claims under Title VII, the NYSHRL, and the NYCHRL, Plaintiff's Amended Complaint, liberally construed, raises wrongful termination, failure to accommodate, retaliation, and hostile work environment claims under the ADA.[3]  On November 16, 2015, the NYPD, the City of New York, Dr. Peter Galvin, and Dr. Eric Gauen moved to dismiss Plaintiff's claims, other than her wrongful termination claim under the ADA, pursuant to Federal Rule of Civil Procedure 12(b)(6).  Dkt. Nos. 21, 36.

---

[2] For ease of reference, the Court will refer to this document as the "EEOC Complaint."

[3] In her opposition, Plaintiff also raises the Pension Board's denial of her request for disability benefits. Dkt. No. 28 ¶ 10(D).  A plaintiff may not use its opposition to a motion to dismiss to amend its complaint to add new claims. *See Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998).  Furthermore, decisions made by the New York City Police Department Pension Fund must ordinarily be challenged in an Article 78 proceeding under the New York Civil Practice Law and Rules and Plaintiff alleges no other independent basis to challenge this pension determination. *Cartagena v. City of New York*, 257 F. Supp. 2d 708, 709-11 (S.D.N.Y. 2003) (Chin, J.).

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Aschroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When evaluating a motion to dismiss, a court must read *pro se* papers "liberally" and "interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). At this stage, the Court "accept[s] the complaint's factual allegations as true and draw[s] all reasonable inferences in the plaintiff's favor." *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 368 (2d Cir. 2014). In addition to the allegations in the complaint itself, the Court can look to "documents attached to the complaint as an exhibit or incorporated in it by reference" *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993)). As a result, the Court can consider Plaintiff's EEOC complaint, which was attached as an exhibit to her original complaint, Dkt. No. 2 at 24-26, and incorporated by reference in her Amended Complaint. Am. Comp. ¶ 4.

## III.   DISCUSSION

Defendants argue that Plaintiff's state claims are barred by her election of remedies, that most of her federal claims have not been administratively exhausted, and that her remaining ADA claims are partially barred by the applicable statute of limitations. Dkt. No. 25. Defendants also argue that claims against Defendants Galvin and Gauen must be dismissed because the ADA and Title VII do not provide for individual liability. *Id.* at 1 n.1.

4

### A. Plaintiff's Election of Remedies Bars Her Claims Under the NYSHRL and NYCHRL

Defendants first argue that Plaintiff's choice to bring claims before the New York City Commission on Human Rights ("CCHR") precludes her from now bringing her NYCHRL and NYSHRL claims in federal court. Br. at 7. Both the NYCHRL and NYSHRL statutes contain election-of-remedies provisions. *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 127 (2d Cir. 2002). The NYSHRL provides in relevant part:

> Any person claiming to be aggrieved by an unlawful discriminatory practice shall have a cause of action in any court of appropriate jurisdiction for damages . . . and such other remedies as may be appropriate . . . unless such person had filed a complaint hereunder or with any local commission on human rights. . . .

N.Y. Exec. Law § 297(9). The NYCHRL similarly provides:

> Except as otherwise provided by law, any person claiming to be aggrieved by an unlawful discriminatory practice . . . shall have a cause of action in any court of competent jurisdiction . . . unless such person has filed a complaint with the City Commission on Human Rights or with the State Division of Human Rights with respect to such alleged unlawful discriminatory practice . . . .

N.Y. City Admin. Code § 8–502(a). These provisions are "nearly identical . . . , and discussion of the latter applies equally to the former." *York*, 286 F.3d at 127 (internal quotation omitted).

Plaintiff's complaint lodged with the CCHR alleged violations of the NYCHRL but not the NYSHRL. Dkt. No. 2 at 24-25. Nevertheless, Plaintiff's NYCHRL *and* NYSHRL claims are barred by the election-of-remedies provisions in those statutes, which govern "unlawful discriminatory practice[s]," not "claims," brought to the attention of the relevant administrative bodies. N.Y. Exec. Law § 297(9); N.Y. City Admin. Code § 8–502(a). It is clear that Plaintiff's NYCHRL and NYSHRL claims "arise from the exact same discriminatory practices," *McNulty v. New York City Dep't of Fin.*, 45 F. Supp. 2d 296, 303 (S.D.N.Y. 1999), namely Defendants'

treatment of Plaintiff after her workplace accident. Am. Comp. ¶¶ 12-18. Because Plaintiff has

already challenged these "unlawful discriminatory practice[s]" with the CCHR, a "local

commission on human rights," N.Y. Exec. Law § 297(9), the NYCHRL and NYSHRL election-

of-remedies provisions prohibit Plaintiff from pursuing either claim in federal court even though

only one statute was cited in the administrative proceeding. *See Session v. New York City Dist.*

*Council of Carpenters*, No. 10-CV-0298 (SHS), 2011 WL 497619, at *4 (S.D.N.Y. Feb. 10,

2011); *McNulty*, 45 F. Supp. 2d at 303-04; *DiPalto v. New York City Off Track Betting Corp.*,

No. 94-CV-5773 (KMW), 1998 WL 276180, at *3 (S.D.N.Y. May 28, 1998). As Plaintiff's state

claims are barred by her election of remedies, she fails to "state a claim to relief that is plausible

on its face" and those claims must therefore be dismissed. *Iqbal*, 556 U.S. at 678 (quoting

*Twombly*, 550 U.S. at 570).

## B. Plaintiff Has Failed to Administratively Exhaust Her Title VII Claims and Her ADA Retaliation and Hostile Work Environment Claims

Defendants next challenge Plaintiff's failure to exhaust her Title VII and ADA retaliation

and hostile work environment claims. Br. at 8-10. A plaintiff must file charges with the EEOC

before bringing Title VII or ADA claims in federal court. *See* 42 U.S.C. § 2000e–5(e); 42

U.S.C. § 12117(a); *see also Williams v. New York City Hous. Auth.*, 458 F.3d 67, 70 (2d Cir.

2006). However, "[c]laims not raised in an EEOC complaint . . . may be brought in federal court

if they are 'reasonably related' to the claim filed with the agency." *Williams*, 458 F.3d at 70. "A

claim is considered reasonably related if the conduct complained of would fall within the scope

of the EEOC investigation which can reasonably be expected to grow out of the charge that was

made." *Fitzgerald v. Henderson*, 251 F.3d 345, 359–60 (2d Cir. 2001) (internal quotation marks

omitted). In evaluating administrative exhaustion under this standard, the Court should consider

whether "the factual allegations made in the administrative complaint can be fairly read to

encompass the claims ultimately pleaded in a civil action." *Mathirampuzha v. Potter*, 548 F.3d 70, 77 (2d Cir. 2008).

Plaintiff argues that none of her claims are administratively exhausted because she filed an internal NYPD complaint and complaints with the NYCHRR and EEOC. Dkt. No. 28 ¶ 24. Defendants do not dispute that Plaintiff filed these complaints, but instead contend that her Title VII, ADA retaliation, and ADA hostile work environment claims are not "reasonably related" to the allegations in the complaint filed with the EEOC and are thus not exhausted. Br. at 9-10. Administrative exhaustion in the Title VII and ADA context "is not a jurisdictional [prerequisite], but only a precondition to bringing [suit]. . . that can be waived by the parties or the court." *Francis v. City of New York*, 235 F.3d 763, 768-69 (2d Cir. 2000) (quoting *Pietras v. Bd. of Fire Comm'rs of Farmingville*, 180 F.3d 468, 474 (2d Cir. 1999)). However, [i]f nonexhaustion is clear from the face of the complaint (and incorporated documents), a motion to dismiss pursuant to Rule 12(b)(6) for failure to exhaust should be granted." *McCoy v. Goord*, 255 F. Supp. 2d 233, 251 (S.D.N.Y. 2003); *see also Jordan v. Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 n.5, 601-04 (E.D.N.Y. 2013).

### 1.    Plaintiff's Title VII claims are not "reasonably related" to her EEOC complaint

Title VII prohibits discrimination based on "race, color, religion, sex, [and] national origin." 42 U.S.C. § 2000e-2(a)(1). Although Plaintiff alleges in her lawsuit that she faced sexual harassment at work and had previously initiated a sexual harassment lawsuit against the NYPD, *see* Am. Comp. ¶ 12, her EEOC complaint focused exclusively on Defendants' failure to accommodate her disability and wrongful termination due to her disability. Dkt. No. 2 at 24-25. At no point does the document reference, even in passing, sexual harassment or any other discrimination on the basis of race, gender, or any other group protected by Title VII, *see id.*, and

Plaintiff makes no claim to the contrary in her opposition. Dkt. No. 28 ¶ 24. Because Plaintiff did not make any "factual allegations . . . describing . . . discriminatory conduct" prohibited by Title VII in her EEOC complaint, her Title VII claims are not "'reasonably related' to the claim filed with the agency." *Williams*, 458 F.3d at 70; *see also Acheampong v. New York City Health & Hosps. Corp.*, No. 11-CV-9205 (LTS), 2015 WL 1333242, at *10 (S.D.N.Y. Mar. 25, 2015) ("Plaintiff's race, color, national origin and age discrimination claims are not reasonably related to the disability claims asserted in his Intake Questionnaire and Charge."). Because Plaintiff's failure to exhaust her Title VII claims "is clear from the face of the complaint" and its incorporated documents, *McCoy*, 255 F. Supp. 2d at 251, those claims are dismissed.

> **2.      Plaintiff's ADA retaliation claim is not "reasonably related" to her EEOC complaint**

To ultimately prevail on an ADA retaliation claim, a plaintiff must prove that "(1) the employee was engaged in an activity protected by the ADA, (2) the employer was aware of that activity, (3) an employment action adverse to the plaintiff occurred, and (4) there existed a causal connection between the protected activity and the adverse employment action." *Sarno v. Douglas Elliman-Gibbons & Ives, Inc.*, 183 F.3d 155, 159 (2d Cir. 1999). While Plaintiff's EEOC complaint alleges that she was threatened with suspension and ultimately terminated for failing to work overtime due to her disability, *see* Dkt. No. 2 at 25, the document "fails to allege that Plaintiff engaged in any sort of protected activity for which retaliation would be prohibited under the ADA." *Sternkopf v. White Plains Hosp.*, No. 14-CV-4076 (CS), 2015 WL 5692183, at *9 (S.D.N.Y. Sept. 25, 2015). Plaintiff suggests in her opposition that she included allegations of retaliation in her internal NYPD complaint rather than her EEOC complaint. Dkt. No. 28 ¶ 24. Because claims only fall within "reasonably related" exception to the exhaustion doctrine if they are "reasonably related" to claims filed *with the EEOC, see Shah v. New York State Dep't of*

*Civil Serv.*, 168 F.3d 610, 614 (2d Cir. 1999), any internal NYPD retaliation complaint Plaintiff

may has filed has no bearing on the exhaustion inquiry.

"Courts in this district have often found that, where a plaintiff does not explicitly allege

retaliation in an administrative complaint, the subsequent investigation of other forms of

discrimination cannot reasonably be expected to extend to retaliation." *Burke v. Gutierrez*, No.

04-CV-7593 (PKC), 2006 WL 89936, at *12 (S.D.N.Y. Jan. 12, 2006), *aff'd sub nom. Burke v.*

*Evans*, 248 F. App'x 206 (2d Cir. 2007).  Because Plaintiff's EEOC complaint made no mention

of any protected activity and thus alleged no motive for retaliation, "nothing in [that document]

would have led an investigator to inquire as to any allegedly retaliatory actions taken against"

her.  *Id.*  For this reason, Plaintiff's ADA retaliation claim is not "reasonably related" to her

EEOC complaint.  *Fitzgerald*, 251 F.3d at 359-60.  As this deficiency "is clear from the face of

the complaint" and its incorporated document, *McCoy*, 255 F. Supp. 2d at 251, Plaintiff's ADA

retaliation claim is dismissed.

> **3.      Plaintiff's ADA hostile work environment claim is not "reasonably**
> **related" to her EEOC complaint**

Hostile work environment claims under the ADA, which "are evaluated under the same

standards as hostile work environment claims under Title VII," *Monterroso v. Sullivan &*

*Cromwell, LLP*, 591 F. Supp. 2d 567, 584 (S.D.N.Y. 2008), arise "[w]hen the workplace is

permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or ·

pervasive to alter the conditions of the victim's employment and create an abusive working

environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and

citation omitted).  Because this kind of violation involves "repeated conduct," the Second Circuit

has held than an administrative complaint does not "reasonably relate" to a hostile work

environment claim when the administrative complaint details "nothing more than a single act of

physical and verbal abuse." *Mathirampuzha*, 548 F.3d at 77. Here, Plaintiff's EEOC complaint

does not describe *any* incidents of physical or verbal abuse. Dkt. No. 2 at 24-26. As a result,

"the factual allegations made in the administrative complaint can[not] be fairly read to

encompass" Plaintiff's hostile work environment claim, *Mathirampuzha*, 548 F.3d at 77, failure

to exhaust "is clear from the face of the complaint" and its incorporated document, *McCoy*, 255

F. Supp. 2d at 251, and Plaintiff's ADA hostile work environment claim is dismissed.

### C. Plaintiff's ADA Failure to Accommodate Claim is Barred by the Applicable Statute of Limitations

To make out a *prima facie* failure to accommodate claim, a plaintiff must show that:

> (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of [her] disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations.

*McMillan v. City of New York*, 711 F.3d 120, 125-26 (2d Cir. 2013) (quoting *McBride v. BIC*

*Consumer Prods. Mfg. Co.*, 583 F.3d 92, 97 (2d Cir. 2009)). As with other ADA claims, a

plaintiff raising a failure to accommodate claim must file a charge with the EEOC within 300

days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1); 42

U.S.C. § 12117(a); *see also Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999).

Plaintiff's EEOC Complaint is dated June 14, 2011.[4] As a result, any failure to accommodate

that "occurred" before August 18, 2010 is time-barred.

---

[4]     Plaintiff indicates in her Amended Complaint that the complaint was filed "on or about January 24, 2011," Am. Comp. ¶ 4, and in her opposition that the complaint was filed on "January 02, 2011." Dkt. No. 28 ¶ 24. The document itself, however, is dated June 14, 2011. Dkt. No. 2 at 26. Defendants rely on the June 14, 2011 date in their motion to dismiss and Plaintiff does not argue in her opposition that the Court should rely on a different date. Because "the document relied on in the complaint contradicts allegations in the complaint, the document, not the allegations, control," and the Court will use the June 14, 2011 date in its statute of limitations analysis. *TufAmerica, Inc. v. Diamond*, 968 F. Supp. 2d 588, 592 (S.D.N.Y. 2013) (quoting *Poindexter v. EMI Record Grp. Inc.*, No. 11-CV-559 (LTS), 2012 WL 1027639, at *2 (S.D.N.Y. Mar. 27, 2012); *see also In re Bristol-Myers Squibb Sec. Litig.*, 312 F. Supp. 2d 549, 555 (S.D.N.Y. 2004) ("The court need not accept as true an allegation that is contradicted by documents on which the complaint relies.").

Ordinarily, "[a] discrete . . . discriminatory act 'occurred' on the day that it 'happened.'" *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 110 (2002). Under this standard, "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire" are separate "incident[s] of discrimination" that must be challenged within 300 days. *Id*. at 114. When, however, a claim is "composed of a series of separate acts that collectively constitute one unlawful [] practice," the continuing violation doctrine applies. *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Washington v. Cty. of Rockland*, 373 F.3d 310, 318 (2d Cir. 2004)). Under that doctrine, a claim is timely "if the plaintiff alleges . . . some non-time-barred acts contributing to the alleged violation." *Id*. (quoting *Harris*, 186 F.3d at 250) (internal quotation marks and alterations omitted).

Operating in this framework, Defendants argue that Plaintiff's failure to accommodate claim is time-barred because her requests for accommodation were denied in June 2009, June 2010, and July 2010. Am. Comp. ¶¶ 7-9; Dkt. No. 2 at 25. Plaintiff counters that her failure to accommodate claim is timely because her requests for accommodation remained unmet for the duration of her employment, which ended in November 2010. Dkt. No. 28 ¶ 10. Essentially, the parties disagree as to whether failure to accommodate is a "discrete act" that occurs when Plaintiff's employer denied her requests for accommodation or whether it is a "continuing violation" that endures as long as Plaintiff suffers the effects of her employer's failure to accommodate. *Morgan*, 536 U.S. at 110.

The Second Circuit confronted this question in the Title VII context in *Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134-35 (2d Cir. 2003). In that case, an employer had failed to accommodate his employee's religious practices. The Second Circuit emphasized that the statute of limitations analysis in a failure to accommodate case should "focus[] on the acts of the

11

employer" rather than the "effect on the employee." *Id.* at 135. Applying this method of analysis, the *Elmenayer* Court noted that "the rejection of a proposed accommodation is a single completed action when taken . . . . [a]lthough the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed." *Id.* As a result, the Second Circuit held that "an employer's rejection of an employee's proposed accommodation for religious practices" is a discrete act that "does not give rise to a continuing violation" and must be challenged within 300 days of the rejection itself. *Id.* at 134-35. Courts in this district have regularly applied *Elmenayer* to failure to accommodate claims under the ADA. *See Davenport v. City of White Plains*, No. 12-CV-8426 (VB), 2015 WL 5459888, at *5 (S.D.N.Y. July 8, 2015); *Whalen v. CSC TKR, LLC*, No. 11-CV-1834 (VB), 2011 WL 6965740, at *4 (S.D.N.Y. Dec. 28, 2011); *Fleming v. Verizon New York, Inc.*, 419 F. Supp. 2d 455, 466 (S.D.N.Y. 2005); *Fol v. City of New York*, No. 01-CV-1115 (THK), 2003 WL 21556938, at *5 (S.D.N.Y. July 9, 2003).

The Court agrees with other courts in this district that *Elmenayer* resolves the question before it. Because Plaintiff alleges that each of her requests for accommodation were denied prior to August 18, 2011, *see* Am. Comp. ¶¶ 7-9; Dkt. No. 2 at 25, her ADA failure to accommodate claim is barred by the statute of limitations and is thus dismissed.

### D. Defendants Galvin and Gauen Are Not Individually Liable for Violations of Title VII or the ADA

Finally, Defendants argue that the claims against Defendants Galvin and Gauen must be dismissed. Br. at 1 n.1. There is no individual liability under Title VII. S*ee Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313, 1317 (2d Cir. 1995), *abrogated on other grounds by Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998); *see also Reynolds v. Barrett*, 685 F.3d 193, 202 (2d Cir. 2012). Similarly, there is no individual liability under the ADA. *See Lane v. Maryhaven Ctr. of Hope*, 944 F. Supp. 158, 162 (E.D.N.Y. 1996) (collecting cases). Because these statutes

do not provide for individual liability and Plaintiff's NYSHRL and NYCHRL claims have been dismissed, Plaintiff fails to state a claim against Defendants Galvin and Gauen and any remaining claims against them are dismissed.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' partial motion to dismiss is granted. Plaintiff's claims against Defendants Galvin and Gauen are dismissed with prejudice. Plaintiff's NYCHRL, NYSHRL, Title VII, ADA retaliation, ADA hostile work environment, and ADA failure to accommodate claims are dismissed with prejudice. Plaintiff's wrongful termination claim under the ADA, which was not challenged in Defendants' partial motion to dismiss, survives.

This resolves Dkt. Nos. 15, 21.


SO ORDERED.

Dated: June ___, 2016
       New York, New York

ALISON J. NATHAN
United States District Judge