UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



Deyanira Gomez,

        Plaintiff,

—v—

New York City Police Department, *et al.*,

        Defendants.

15-CV-4036 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

Plaintiff Deyanira Gomez, a former New York City Police Department ("NYPD") Officer, asserts that she was wrongfully terminated based on disability discrimination under the Americans with Disabilities Act ("ADA"). Defendants NYPD and the City of New York have moved this Court for summary judgment. Upon the Court's evaluation of the evidence presented, Defendants' motion for summary judgment is GRANTED.

## I. BACKGROUND

### A. Procedural Background

On November 2, 2015, Plaintiff filed the Amended Complaint under consideration here. Defendants moved to dismiss nearly all of Plaintiff's causes of action, which the Court granted in its June 7, 2016 Memorandum and Order. *See* Dkt. No. 40; *Gomez v. New York City Police Dep't*, 191 F. Supp. 3d 293 (S.D.N.Y. 2016). Plaintiff then moved the Court of reconsideration of that order, which the Court denied. *See* Dkt. No. 51.

As a result, Plaintiff's only remaining cause of action is one the Court construed as a wrongful termination claim under the ADA, and which was not challenged by Defendants' motion to dismiss. *See Gomez*, 191 F. Supp. 3d at 303. This last claim became the subject of

1

Defendants' June 2, 2017 motion for summary judgment, presently before the Court. *See* Dkt. Nos. 88-93.

**B. Factual Summary**

The Court outlined the factual background of Plaintiff's action in its June 7, 2016 Order. *Gomez*, 191 F. Supp. 3d at 296-97. For the purposes of this motion, the Court recites only those facts relevant to Plaintiff's claim for unlawful termination under the ADA. The following facts are undisputed unless otherwise noted.[1]

Plaintiff was appointed to the New York City Police Department ("NYPD") as a police officer in 1994. Defendants' Rule 56.1 Statement of Undisputed Material Facts ("Defs. 56.1"), Dkt. No. 91, ¶ 1. In 2008, Plaintiff suffered an injury while performing the duties of a police officer. Defs. 56.1 ¶ 2. On January 4, 2009, Plaintiff was designated "Chronic Sick Category B." Defs. 56.1 ¶ 15; Declaration of Scott C. Silverman in Support of Defendants' Motion for Summary Judgment ("Silverman Decl."), Ex. A.[2] On March 2, 2009, Plaintiff was assigned to the Brooklyn Court Section, which Plaintiff asserts was the result of being on restrictive duty due to her injury. Defs. 56.1 ¶ 7; Plaintiff's Opposition/Response to Motion for Summary Judgment ("Opp."), Dkt. No. 104, at 5.[3]

**1. Plaintiff's June 2009 Suspension**

On June 1, 2009, Plaintiff was evaluated by Police Surgeon Peter Galvin. Defs. 56.1 ¶ 8. Plaintiff claims that she saw Dr. Galvin because of panic attacks she was having due to her injuries and stressful work assignment and that she asked Dr. Galvin for a change of assignment or restriction from overtime, which he refused. Opp. at 5. Dr. Galvin referred Plaintiff to Dr.

---

[1] In many instances, Plaintiff simply did not respond to the particular paragraph in Defendants' Rule 56.1 Statement. Accordingly, the Court deems those facts, which are all supported by proper citations to the record, as undisputed. *See* Local Civ. R. 56.1(c); *Pinede v. N.Y. City Dep't of Envtl. Prot.*, No. 12-CV-6344 (CBA), 2015 WL 4251246 at *1, n.4 (E.D.N.Y. July 13, 2015).

[2] All referenced exhibits are from the Silverman declaration unless otherwise specified and will be denoted by their letter alone.

[3] Plaintiff submitted one response to Defendants' motion, which the Court construes both as her memorandum of law and as her response to Defendants' Rule 56.1 statement.

Eric Gauen, an NYPD psychologist. Defs. 56.1 ¶ 9; Opp. at 5. Based on Dr. Gauen's evaluation, Plaintiff was directed to attend in-patient alcohol counseling. Defs. 56.1 ¶ 10. Plaintiff believes this was based on false information and challenges the Counseling Services Unit's authority to mandate this. Opp. at 5. She refused to comply and went to the Medical Division to discuss the order. Defs. 56.1 ¶ 11; Opp. at 5. A Deputy Inspector told her that she was subject to suspension if she failed to comply with the directives of the Counseling Services Unit. Defs. 56.1 ¶ 12; Ex. E. Plaintiff states that she did not consider it a lawful order, Opp. at 5, and when she refused to comply, she was suspended for thirty days for failure to comply. Defs. 56.1 ¶ 13; Opp. at 5.

### 2. Plaintiff's December 2009 Suspension

On November 28, 2009, Plaintiff reported sick and was admitted to St. Luke's Hospital. Defs. 56.1 ¶ 17. Defendants claim that Plaintiff failed to notify the Medical Division that she was discharged from the hospital, but Plaintiff disputes this. *Id.*; Opp. at 5. Soon after her discharge, Defendants claim that Plaintiff twice more failed to appear at the Special Medical District as ordered by the Absence Control and Investigations Unit officers, claiming that she could not travel. Defs. 56.1 ¶ 18; Ex. G at 3. Plaintiff claims she was never contacted to schedule an appointment. Opp. at 6. On December 8, 2009, Dr. Galvin evaluated Plaintiff at her residence and determined that she was able to travel to the Special Medical District. Defs. 56.1 ¶ 19. Thereafter, she was served with Charges and Specifications detailing that she had been late for appointments, failed to notify the Medical Division about her discharge, and failed to comply with directives to report to the Special Medical District due to her reported inability to travel, which was later determined to be false. Defs. 56.1 ¶ 20; Ex. H. Plaintiff was suspended for thirty days on December 8, 2009 following this conduct, and was placed on Level 3 Special Monitoring. Defs. 56.1 ¶¶ 21-22.

### 3. Plaintiff's May 2010 Disciplinary Hearing

On May 12-13, 2010, Plaintiff was the subject of a Departmental Trial regarding the disciplinary cases described above. Defs. 56.1 ¶ 23. Plaintiff was represented by counsel and

testified on her own behalf. Defs. 56.1 ¶ 24. At the two-day hearing, NYPD called six witnesses and one rebuttal witness. Defs. 56.1 ¶ 25. On September 7, 2010, Assistant Deputy Commissioner Robert Vinal issued a Report and Recommendation, finding Plaintiff guilty of five of the six charges and specifications. Defs. 56.1 ¶ 26; *See* Ex. I. Vinal recommended that Plaintiff be dismissed but that her dismissal be held in abeyance for a period of one year during which time she remains on the force but may be terminated at any time without further proceedings. Defs. 56.1 ¶ 27 (citing Ex. I at 19). Police Commissioner Raymond Kelly approved of Vinal's report and disposition of charges, and Plaintiff was placed on Dismissal Probation on October 20, 2010. Defs. 56.1 ¶¶ 29-31.

### 4. Plaintiff's September 2010 Suspension

A similar pattern repeated around the same time Vinal issued his report. On September 1, 2010, Plaintiff reported sick. Defs. 56.1 ¶ 32. Shortly thereafter, Dr. Gauen and Dr. Galvin both evaluated Plaintiff and cleared her to return to duty. Defs. 56.1 ¶¶ 33-34. After being cleared to return, Defendants claim that Dr. Gauen called Plaintiff and directed her to report to the Psychological Evaluation Unit, although Plaintiff claims she was never contacted, and that she had independently reported a conflicting doctor's appointment. Defs. 56.1 ¶ 35, Opp. at 6-7. Dr. Gauen notified the Absence Control and Investigations Unit that Plaintiff failed to report, and on September 17, 2010, Absence Control officers arrived at Plaintiff's residence to transport her to the Psychological Evaluation Unit. Defs. 56.1 ¶ 37. After initially refusing to comply, which Plaintiff suggests was because she did not have an appointment and did not feel comfortable going alone inside the officer's car when she knew the Medical Division was closed at the time, Opp. at 7, Plaintiff was ultimately transported by EMS to Richmond University Medical Center. Defs. 56.1 ¶ 40. Plaintiff claims she felt held hostage by the Absence Control officer and called EMS for herself. Opp. at 7.

On September 20, 2010, Plaintiff was evaluated again by Dr. Gauen and cleared to return to duty. Defs. 56.1 ¶ 42. Defendants claim that Plaintiff admitted she failed to comply with the

4

orders of the Absence Control officer, but Plaintiff disputes admitting anything during that evaluation. Defs. 56.1 ¶ 43; Opp. at 7. That day, Plaintiff was suspended for failing to comply with an order and violation of the Chronic Absence Control Procedure and served with Charges and Specifications detailing the above-described events. Defs. 56.1 ¶¶ 44-45; Ex. M. Plaintiff argues she first found out about the suspension and charges during discovery in this litigation. Opp. at 7.

### 5. Plaintiff's October 2010 Suspension

On October 20, 2010, Plaintiff was relieved from suspension, placed on modified assignment, and transferred to the Bronx Court section. Defs. 56.1 ¶ 46. Defendants contend that she was transferred because she could not perform her job in Brooklyn, but Plaintiff argues that Defendants never performed the needed evaluations to make this statement. Opp. at 7. Plaintiff did not report to the Bronx Court Section on time and failed to contact anyone to explain this failure. Defs. 56.1 ¶¶ 47-48. When Plaintiff did arrive, she was told to change into her uniform, but she walked back out of the locker room dressed in civilian attire; Plaintiff claims her uniform was in her car. Defs. 56.1 ¶¶ 49-51; Opp. at 8. Plaintiff then walked into the administrative office, threw her police identification card on the desk, stated "I don't need this shit," and walked out. Defs. 56.1 ¶ 51. Plaintiff confirmed this account at her deposition. Defs. 56.1 ¶¶ 52-53 (citing Ex. J at pp. 49-50). On October 21, 2010, Plaintiff was suspended from duty due to her refusal to perform her duties and was charged with Charges and Specifications detailing the above incidents. Defs. 56.1 ¶¶ 54-55, Ex. O. Plaintiff claims she was not contacted regarding this suspension or served with these charges. Opp. at 8.

### 6. Plaintiff's November 2010 Termination

On November 5, 2010, Chief of Personnel Thomas V. Dale recommended the termination of Plaintiff while on dismissal probation. Defs. 56.1 ¶ 56; Ex. P. The recommendation states:

"Since her placement on dismissal probation, Police Officer Gomez has received another set of charges and specifications. She now has two sets pending. These incidents clearly prove she is unwilling to change her behavior to a level that is acceptable. She has

5

abused the department's sick policy and has refused to comply with the guidelines in place to help her with her problems. Police Officer Gomez does not possess the judgment or integrity this department expects of someone with her tenure. The department has afforded her many opportunities to improve her behavior; however, she has failed to do so. Therefore, it is recommended Police Officer Gomez be terminated while on dismissal probation.

Ex. P. Plaintiff's only response to this is that she was "never put in necessary programs available thru [sic] the NYPD." Opp. at 8. The recommendation was approved and endorsed by First Deputy Commissioner Rafael Pineiro and Assistant Chief Michael E. Shea. Defs. 56.1 ¶ 58. By letter dated November 24, 2010, Plaintiff was informed that she was dismissed. Defs. 56.1 ¶ 59; Ex. R.

## II. LEGAL STANDARD

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must "construe the facts in the light most favorable to the non-moving party and resolve all ambiguities and draw all reasonable inferences against the movant." *Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 167 (2d Cir. 2014) (quotation marks omitted). If the court determines that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial" and summary judgment should be granted to the moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

It is the initial burden of the movant to present evidence on each material element of its claim or defense and demonstrate that it is entitled to relief as a matter of law. *Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence…on an essential element of the nonmovant's claim." *Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

In this case, the Court affords "special solicitude" to Plaintiff's position as a *pro se* litigant. *See Graham v. Lewinski*, 848 F.2d 342, 344 (2d Cir. 1988). A *pro se* plaintiff is entitled to have her submissions read liberally and interpreted to "raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), however the plaintiff's *pro se* status does not relieve her of the usual requirements of summary judgment, specifically the obligation that she come forward with evidence demonstrating a genuine dispute regarding material fact. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991). Plaintiff was served with the notice required by Local Rule 56.2, informing her of the nature of a summary judgment motion and the manner in which it could be opposed, and warning that failure to respond "with affidavits and/or documents contradicting the material facts asserted by the defendant" may lead the court to "accept defendants' facts as true." Dkt. No. 92.

Additionally, the Second Circuit has instructed that trial courts "must be cautious about granting summary judgment to an employer" when its intent is at issue. *See Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1224 (2d Cir. 1994). Because the employer rarely leaves direct evidence of its discriminatory or retaliatory intent, courts must carefully search for circumstantial proof. *Id.* However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### III. DISCUSSION

A plaintiff alleging employment discrimination under the ADA bears the initial burden of establishing a *prima facie* case. *See Wernick v. Fed. Reserve Bank of N.Y.*, 91 F.3d 379, 383 (2d Cir. 1996). In order to establish a *prima facie* case of discriminatory discharge, "a plaintiff must show that: (1) her employer is subject to the ADA; (2) she suffers from a disability within the meaning of the ADA; (3) she could perform the essential functions of her job with or without

7

reasonable accommodation; and (4) she was fired because of her disability." *Ryan v. Grae & Rybicki, P.C.*, 135 F.3d 867, 869-70 (2d Cir. 1998).

Then, assuming a plaintiff establishes her *prima facie* case of discrimination, the burden then shifts under the familiar standard of *McDonnell Douglas*. *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973); *Davis v. N.Y. City Dep't of Educ.*, 804 F.3d 231, 235 (2d Cir. 2015) (stating that claims alleging discrimination under the ADA are subject to the burden-shifting analysis). The plaintiff is aided by a presumption of discrimination unless the defendant proffers a "legitimate, nondiscriminatory reason" for the adverse employment action. Then the plaintiff must produce evidence and carry the burden of persuasion that the proffered reason is pretextual. *McPherson v. N.Y. City Dep't of Educ.*, 457 F.3d 211, 215 (2d Cir. 2006).

Applying this framework to Plaintiff's ADA claim shows that she cannot satisfy the minimal burden of establishing a *prima facie* case on the basis of the undisputed facts. But assuming *arguendo* she were able to meet that standard, Defendants also offer a legitimate, nondiscriminatory reason for terminating Plaintiff's employment that Plaintiff cannot show is pretextual.

### A. Plaintiff Fails To Establish a *Prima Facie* Case of Discrimination

Even if Plaintiff were able to establish the first three elements of her *prima facie* case, she does not point to evidence in the record sufficient for a rational trier of fact to conclude that she established the fourth prong of the *prima facie* case – that she was fired *because of* her disability. Defendants note that she alleged in her deposition that Sergeant Brown complained about the fact that she was working too slowly and causing backlogs for others, *see* Memorandum of Law in Support of Defendants' Motion for Summary Judgment ("Br."), Dkt. No. 90, at 4 (quoting Ex. J. at 16), however Plaintiff cannot point to any direct evidence in the record to suggest that any employees made any statements regarding her disability. Moreover, this remark was allegedly made eighteen months before Plaintiff's termination, and she does not allege that Sergeant Brown played any role in the NYPD's decision to terminate her. Br. at 4.

Plaintiff may also satisfy her burden by showing that she was "similarly situated in all material respects" to other individuals who were treated differently by her employer. *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997). However, Plaintiff has not offered any valid comparator. In her deposition, Plaintiff mentioned "one male officer" on restricted duty, but she never established whether he had engaged in similar conduct or explained how he was treated differently by the NYPD. Br. at 5.

In her opposition to summary judgment, Plaintiff argues that the Defendants violated various provisions of New York's Mental Hygiene Law in ordering her participation in an in-patient alcohol counseling program, "forged" her medical records, and used this to suspend her and place her on dismissal probation. Opp. at 2-3. However, at no point in Plaintiff's opposition does she point to any additional evidence that she was dismissed *because* or her disability, or that discrimination was even a "motivating factor" in her termination. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 337-38 (2d Cir. 2000) (describing how a plaintiff may establish a prima facie case by proving his disability was a motivating factor in his termination).

In sum, none of Plaintiff's allegations raises an inference of discriminatory intent sufficient to establish a *prima facie* case. Where, as here, the burden at trial would fall on Plaintiff, and because the record "could not lead a rational trier of fact to find for the [Plaintiff], there is no genuine issue for trial" and Defendants are entitled to summary judgment. *Matsushita*, 475 U.S. at 587 (internal quotation marks and citation omitted); *Cordiano*, 575 F.3d at 204.

### B. Even If Plaintiff Had Established a *Prima Facie* Case, Defendants Offer Non-Discriminatory Explanations Plaintiff Fails to Prove Are Pretextual

Even if Plaintiff were able to establish her *prima facie* case of discrimination, Defendants have proffered a "legitimate, nondiscriminatory reason" for the adverse employment action, and Plaintiff cannot meet her burden that these reasons were pretextual. *McPherson*, 457 F.3d at 215.

As detailed above, Plaintiff does not dispute that she was suspended for failing to follow orders on two separate occasions in 2009, that she was found guilty of five charges against her following a May 2010 departmental hearing during which she was represented by counsel, that

9

she was permitted to remain on the force while on probation, and that while on this probation, she walked off of her post at Bronx Court Section. Defs. 56.1 ¶¶ 24-31, 44-45, 51-52; Opp. at 6-8. The only oblique references in the Recommendation of Termination to her disability are in relaying that she was in chronic sick category "B" and that she "abused the department's sick policy." Ex. P. On the basis of this evidence, no reasonable juror could find that Plaintiff established that Defendants' stated rationale was pretextual.

As the Defendants note, the proffered reasons are all legitimate reasons for termination. In *Nieves v. Angelo, Gordon & Co.*, the Second Circuit found that insubordination and failure to complete assigned tasks were legitimate reasons for termination. 341 F. App'x 676, 679 (2d Cir. 2009). And violations of an employer's policies, including sick-leave policies, have been held to be legitimate, non-discriminatory reasons for termination. *See Figueroa v. City of New York*, No. 06-CV-6277 (RRM), 2015 WL 1298502, at *5 (E.D.N.Y. Mar. 23, 2015) (finding a violation of NYPD's sick-leave policy to be a legitimate reason for termination); *Pacenza v. IBM Corp.*, No. 04-CV-5831 (PGG), 2009 WL 890060, at *13 (S.D.N.Y. Apr. 2, 2009) (finding plaintiff's violation of defendant-employer's internet policy to be a legitimate reason for termination); *Jones v. Gov't Emps. Ins. Co.*, No. 04-CV-3492, 2006 WL 1229136, at *7 (E.D.N.Y. May 8, 2006) (finding no pretext where ADA plaintiff had a long history of violating employer's attendance policy). Based on the undisputed evidence, Defendants' proffered non-discriminatory justifications are well-supported, and no reasonable factfinder could conclude otherwise.

Comparison to *Figueroa v. City of New York* is instructive as to how Plaintiff has failed to carry her burden that Defendants' reasons were pretextual. In *Figueroa*, the district court granted summary judgment to the defendants on the basis of similar facts as alleged here. *Figueroa*, 2015 WL 1298502, at *4-7. The plaintiff's claim for disability discrimination relating to the NYPD's termination of her employment was based on a theory that the NYPD falsely diagnosed her with a drinking problem and then proffered "a fabricated baseless reason for terminating her employment," namely, violation of NYPD's sick-leave policy. *Id.* at *4. Despite plaintiff's argument that she had not actually violated the sick-leave policy, the district

court found that her failure to provide any evidence that her firing was pretextual or that her perceived disability played a role beyond "wholly unsupported and conclusory statements" entitled the defendants to summary judgment. *Id.* at *6. In contrast to the plaintiff in *Figueroa*, there is no genuine dispute that Plaintiff has violated the NYPD's policies on *multiple* occasions and has simply walked off the job, and yet much like the plaintiff in *Figueroa*, Plaintiff offers no evidence of disability-based discrimination from which a reasonable juror could find in her favor.

A plaintiff must produce "sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not [discrimination] was the real reason for the [adverse employment action]." *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996) (internal quotation marks and citation omitted). Plaintiff fails to meet this burden and fails to raise a genuine issue of material fact that warrants trial in this matter.

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED. This resolves Docket Number 88. The Clerk of Court is respectfully directed to close the case and enter judgment. A copy of this Order will be mailed to the *pro se* Plaintiff by Chambers.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. See *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: March 29, 2018
New York, New York

_____
ALISON J. NATHAN
United States District Judge